UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| In re: | Case No. 21-11556-[] |
| --- | --- |
| Wirta Hotels, LLC,[1] | **DECLARATION OF BRET WIRTA IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS** |
| Debtor. | |

I, Bret Wirta, declare as follows:

1.    I am a member, along with my wife, Patricia Wirta, of Wirta Hotels, LLC ("Debtor"), with management authority.  Wirta 2-Hotels, Inc. ("W2HI") also has management authority for Debtor, and I am a 50% owner of W2HI, along with my wife who owns 50%, and I am the President of W2HI.  I have personal knowledge of the facts stated herein and if asked to testify regarding the same would and could competently do so.

2.    I make this declaration in support of the following motions filed in these chapter 11 cases (the "First Day Motions"):   (a) *Debtor's Emergency Motion for Interim and Final Order (I) Authorizing Use of Cash Collateral, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* (the "Cash Collateral Motion"); (b) *Debtor's Emergency Motion for*

---

[1]    The last four digits of Debtor's federal tax identification number are 2625.

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Order *(I) Prohibiting Utilities from Altering, Refusing, or Stopping Service, (II) Deeming Utilities Adequately Assured of Payment, and (III) Granting Related Relief* (the "Utilities Motion"); and (c) *Debtor's Emergency Motion for Order (I) Authorizing Continued Use of Existing Bank Accounts and Cash Management System and (II) Granting Related Relief* (the "Cash Management Motion"). Capitalized terms used but not defined herein shall have the meanings given to such terms in the applicable First Day Motion.

3. On August 12, 2021, Patricia Wirta, W2HI, and I authorized Debtor to file a voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code. I firmly believe that such action is in the best interest of Debtor's creditors and all relevant stakeholders, and I am hopeful and optimistic that Debtor will emerge from this reorganization process with a healthier balance sheet that positions Debtor for long-term success in the hotel industry.

4. This Declaration is divided into a Background section, which briefly describes Debtor's operations, and a First Day Motions section, which provides evidentiary support for the relief sought in each of the First Day Motions.

## BACKGROUND

**A.** **Debtor and the Hotel.**

5. Debtor owns and operates a hotel commonly known as the "Quality Inn & Suites at Olympic National Park," located at 134 River Road, Sequim, Washington 98382 (the "Hotel"). The Hotel has operated successfully since it opened in 2005 (including through the Great Recession and the COVID-19 pandemic). The Hotel operates under the "Quality Inn" brand pursuant to a franchise agreement with Choice Hotels International, Inc. ("Choice"). The Hotel has 60 rooms, an indoor pool and hot tub, a fitness room, a business center, a deluxe continental breakfast bar for its guests, and a food pantry. The Hotel also rents conference room space on a consistent basis to various groups. The Hotel was recently honored with its fifth consecutive Platinum Award, which places it in the top three percent (3%) of hotels in its

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 2

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 2 of 33

franchise based on guest satisfaction. An article detailing the 2020 Platinum Award is attached hereto as Exhibit A. The Hotel also completed a property improvement plan approximately three (3) years ago which resulted in a substantial refurbishment of the interior.

6.     Additionally, approximately one-quarter of the Hotel's staff is developmentally disabled, and most of that staff has been employed at the Hotel for over five (5) years. In February 2020, on account of these efforts to promote an inclusive and hospitable working environment for those folks who traditionally struggle to secure regular employment, Governor Jay Inslee personally presented Ms. Nancy Merrigan, general manager of the Hotel, with the Governor's Committee on Disability Issues & Employment "Employer of the Year" award. See Exhibit B (press release regarding award) and Exhibit C (photograph of ceremony with Governor Inslee).

7.     In addition to my work with the Hotel, I am extensively involved in the Sequim community. Among other things, I served as President of the Washington National Parks Fund, which raises funds for the Olympic National Park; founded the annual Sequim Balloon Festival, which continues to attract tourists to the area; served as a founding corporate member of the Olympic Discovery Trail; installed Tesla super-charging stations at the other hotel that I operate in Sequim, the Holiday Inn Express & Suites ("HIE")[2], as part of an initiative that has brought new visitors to the Olympic Peninsula; maintain a close working relationship with the Olympic Peninsula Visitor Bureau and the City of Sequim's marketing director; and have promoted the Hotel's current management, which is largely responsible for the Hotel's recent prestigious awards, from within my organization.

8.     Like virtually every facet of the hospitality industry across the world, the Hotel has suffered as a result of the COVID-19 pandemic and other exogenous factors (such as related "stay-at-home" orders and the unwillingness of individuals to travel in light of public health

---

[2]   HIE, which was comprised of two entities, obtained confirmation of a chapter 11 plan of reorganization in Case No. 20-12398 after a contested 3-day confirmation hearing in which Wilmington was the only objecting creditor to the reorganization plan. The effective date for that plan occurred on July 28, 2021.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 3

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

issues during the height of the pandemic). These pandemic-related problems caused Debtor to miss payments to its secured creditor, Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of Wells Fargo Commercial Mortgage Trust 2016-C35, Commercial Mortgage Pass-Through Certificates, Series 2016-C35 ("Wilmington") for six (6) months, at which point Debtor has made monthly payments from October 2020 to date that have been accepted by Wilmington and that have established a course of dealing consistent with a proposal made by Debtor to Wilmington which Wilmington never rejected.

9. When it opened, the Hotel obtained a loan from a lender other than Wilmington. Debtor always made timely and full payments to its previous lender, including through the Great Recession. It refinanced that loan with UBS (which subsequently sold the Loan to Wilmington) in June 2016 and made full and timely payments to Wilmington until the COVID-19 pandemic hit. The pandemic had a devastating impact on the Hotel and, indeed, the entire hospitality industry. It caused a drastic decline in occupancy and rendered Debtor unable to meet its debt service to Wilmington for a time period of six (6) months.

10. Although well aware of the economic impact of the pandemic, Wilmington sent a letter on July 10, 2020 informing Debtor that it was in default for failing to make payments from April 2020 through July 2020. As a result, Wilmington indicated that it was charging default interest. Subsequently, on August 26, 2020, Wilmington sent a letter to Debtor indicating that it was electing to accelerate amounts due under the loan. In or around October 2020, Debtor contacted Wilmington and stated that it would be resuming monthly payments of principal, interest and taxes, which Debtor then began making in October 2020 with payments continuing through August 2021.

11. Wilmington did not reject any of the monthly payments or otherwise indicate that it would not apply the payments to the loan as directed by Debtor. Therefore, I believed that the payments were applied upon receipt to amounts due under the loan for outstanding principal, interest, tax escrow, insurance escrow, and other required reserves. However, on April 22, 2021

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 4

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 4 of 33

(approximately six (6) months after Debtor started remaking timely monthly payments), Wilmington sent Debtor an email purporting to show the balance needed to bring the loan current, representing that $211,127.82 was held in suspense and had not been applied to the loan despite payments having been made since October 2020. After applying an offset of the funds held in suspense, the email indicated a balance due of $615,715.85. Thereafter on May 25, 2021, Wilmington then sent Debtor a letter indicating that it had "held off on commencing the exercise of its rights and remedies as an accommodation to Borrower." The letter further stated that although Debtor made payments to Wilmington, the payments had not cured the default and were conditionally accepted. Finally, the letter informed Debtor that Wilmington intended to commence a foreclosure of the Hotel.

12. On the same day, May 25, 2021, Wilmington sent a notice of default (the "Notice of Default") to start a non-judicial foreclosure. The Notice of Default incorrectly represented that ten (10) payments were due from August 6, 2020 forward, despite the fact that Debtor had made monthly payments since October 2020. The Notice of Default additionally stated that $232,432.17 was owed in default interest with only $2,213.60 held in a suspense account (only about a month after Wilmington stated that there was $211,172.82 was held in suspense). The Notice of Default failed to provide any accounting whatsoever as to how $208,914.22 (the difference between the $211,172.82 previously held in suspense as of April 2021 and the "new" purported balance in suspense of $2,213.60) was applied.

13. After the May 25, 2021 letter and Notice of Default were issued by Wilmington, Debtor continued making payments through August 2021. Wilmington then commenced an action in Clallam County Superior Court for the appointment of a custodial receiver in late July 2021. On August 10, 2021, Debtor requested and received a transaction history from Wilmington. The transaction history now indicates that the payments made by Debtor since October 2020 were belatedly applied on August 3, 2021 to principal, interest, escrows, and a reserve (a position that completely contradicts the representations made by Wilmington in the

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 5

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 5 of 33

letter and Notice of Default). There is no explanation as to why the payments were not applied when received by Wilmington. Wilmington also continues to seek default interest, which it waived by accepting payments from Debtor. Yet, even if Wilmington was entitled to default interest, the regular interest and default interest that have accrued are substantially less than what Wilmington seeks because the principal balance of the Loan should have been reduced when Debtor made payments to Wilmington.

14.     Essentially, Debtor has no means to determine what actual amounts are due on the loan. Regardless of the precise numbers, there is no doubt that Wilmington has a significant equity cushion in the Hotel. Based upon prior appraisals of the Hotel and its vastly improved performance since the height of the pandemic, I believe the Hotel is worth approximately $8 million. The Hotel is operating smoothly and has a great chance at successfully reorganizing while allowing Debtor to pay the appropriate amount due to Wilmington in a fair and equitable manner. As a result, Debtor is seeking relief from this Court to reorganize and restructure its operations to better position itself for long-run success.

15.     To facilitate the reorganization and to reflect that the Hotel is really a unified operation, on August 11, 2021, I caused the entity Wirta 2-H, LLC, to be merged into Wirta Hotel, LLC (*i.e.*, Debtor) under Washington law. The merger became effective on August 12, 2021, with Debtor being the surviving entity.[3] The two entities have always been closely related, and the merger allows me to reorganize the business while saving the substantial additional costs associated with a multi-debtor bankruptcy filing. This merger does not change Wilmington's position in any way, as the two entities were co-borrowers under the Loan (as described below) and Wilmington retains a security interest over substantially all of Debtor's assets. If anything, the merger benefits all stakeholders in this chapter 11 case by lowering administrative costs and

---

[3]     References herein to "Debtor" that relate to events and circumstances prior to August 12, 2021, refer to Wirta Hotels, LLC and/or Wirta 2-H, LLC, as the context requires.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 6

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

permitting a more efficient reorganization at a time when Debtor's liquidity remains constrained due to the lingering effects of the COVID-19 pandemic.

**B.     The Loan Agreement.**

16.     Debtor is the borrower under that certain Loan Agreement, dated as of June 17, 2016 (the "Loan Agreement") between Debtor and Wirta 2-H, LLC (as co-borrowers) and UBS Real Estate Securities Inc. (as lender) (the "Original Lender"). Under the Loan Agreement, the Original Lender made a loan to Debtor in the original principal sum of $4,600,000.00 (the "Loan"). Debtor obtained the Loan to refinance its prior loan, on which Debtor always made timely and full payments notwithstanding the Great Recession. The Loan is evidenced by a promissory note (the "Note") that Debtor made, executed, and delivered to the Original Lender in the original principal sum of $4,600,000.00.

17.     The Note is secured by, among other things, a Fee and Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated as of June 17, 2016 (the "Deed of Trust") executed by Debtor as grantor, in favor of First American Title Insurance Company, as trustee, for the benefit of the Original Lender as beneficiary, which was recorded June 20, 2016 as Instrument No. 2016-1335913 in Clallam County, Washington. The Note, the Deed of Trust, and any other documents evidencing or relating to the Loan are referred to herein as the "Loan Documents." Through a series of assignments and allonges, Wilmington asserts that it is now the owner and holder of the Note, the beneficiary under the Deed of Trust, and the secured party and assignee under all of the other Loan Documents.

18.     Under the Deed of Trust, Wilmington asserts a security interest in, among other things, the real property upon which the Hotel is situated; the Hotel itself (*i.e.*, the buildings, structures, fixtures, additions, modifications, etc. on the real property); "Personal Property," "Agreements," "Accounts Receivables," "Leases and Rents," and "Proceeds," which includes, among other things, any form of collateral proceeds which have been reduced to cash.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 7

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 7 of 33

**C.** **Notice of Default and Receivership Motion.**

19.     As discussed above, on or about May 25, 2021, Wilmington sent Debtor the Notice of Default, attempting to commence non-judicial foreclosure proceedings pursuant to RCW 61.24.  The Notice of Default is attached hereto as <u>Exhibit D</u>.

20.     Both prior to and after the Notice of Default was sent, my advisors and I engaged in extensive, good-faith efforts to develop a consensual workout plan to cure the purported defaults and put the Hotel on a sound fiscal track.   In October of 2020 we proposed to Wilmington to resume making monthly payments of principal, interest and taxes and a plan to ultimately make up back payments and other amounts owed. Debtor made payments in accordance with that proposal in good faith without protest or rejection by Wilmington.  After the Notice of Default, in June of 2021, Debtor made a similar proposal to Wilmington, which again accepted payments as proposed without protest or rejection until it filed its custodial receivership action in late July 2021.

21.     In my many of years of experience in the hotel industry, I know how devastating appointment of a receiver can be.  In a frequent scenario, key employees immediately seek alternative employment.   Additionally, it goes without saying that hotels are inherently local enterprises, and they are best served by management that knows and is committed to the local market.  This is all the more true in the case of the Hotel, which is located in Sequim, a quaint town in the remote Olympic Peninsula.

22.     The hearing to consider Wilmington's receivership motion was scheduled for Friday, August 13, 2021, at 1:30 P.M., and Debtor filed an opposition to Wilmington's motion.  Although I believe that Debtor would prevail at that hearing, given my understanding of how devastating a receivership can be for a hotel and the misinformation provided by Wilmington that impairs its ability to contest that it has a valid nonjudicial foreclosure pending, I made the difficult but necessary decision to file this subchapter V case and pursue a plan of reorganization for Debtor rather than risk such a devastating and unjust outcome.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 8

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 8 of 33

23.  **Cash Collateral Motion**.  As of the Petition Date, Debtor has approximately $340,000 in cash collateral.  This cash is essential to the operation of the Hotel.  Without access to that cash, Debtor has virtually no working capital and could not make payments to employees, utility service providers, trade vendors, business and service suppliers, and others.  I propose that Debtor be authorized to use that cash provided they adhere to the budget (subject to total outflows not being more than 15% greater than the budgeted amount for any four-week period without Debtor providing notice to Wilmington and, if necessary, additional relief from this Court).  The budget I have prepared is attached hereto as Exhibit E and is also attached to the Cash Collateral Motion.  I believe this budget sets forth reasonable, conservative estimates of expenses and revenue for the Hotel.

24.  I do not believe our usage of cash collateral will harm Wilmington.  As an initial matter, it is common sense that the Hotel is worth more as a going concern to all of Debtor's creditors and other stakeholders, and the Hotel cannot continue as a going concern without immediate access to its working capital.  Employees, trade vendors, and other stakeholders cannot be expected—and will likely refuse—to finance Debtor's chapter 11 case by supplying labor, goods, and services on credit.

25.  Additionally, the value of the Hotel likely far exceeds the amount owed to Wilmington under the Loan.  An appraisal from around the time of the origination of the Loan, a summary portion[4] of which is attached hereto as Exhibit F, states that the value of the Hotel as of May 4, 2016 was $7,400,000 and projected that the value of the Hotel upon stabilization (then forecasted for May 4, 2018) would be $8,100,000.  Additionally, it is my understanding that an appraisal requested by Wilmington from September 2020—when the hospitality industry was in dire straits—which has not been shared with me, valued the Hotel at $6,900,000.  Based on these

---

[4]  The whole appraisal is voluminous, but Debtor will gladly provide it to any party upon request or upload it separately to the Court at the appropriate time.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 9

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA   Doc 7   Filed 08/13/21   Ent. 08/13/21 14:15:31   Pg. 9 of 33

objective, third-party valuations, the improved position and performance of the Hotel in 2021, and my many years managing Debtor, I believe the Hotel (including the real property upon which it is situated) is approximately $8,000,000. By contrast, I believe the amount owed to Wilmington is approximately $4.6 million, comprised of approximately $4.1 million in outstanding principal and my best, conservative (*i.e.*, high) estimation ($500k) of late fees, interest, and other charges (all of which Debtor reserves the right to contest).

26. In my view, Debtor would suffer immediate and irreparable harm absent the relief requested in the Cash Collateral Motion.

27. **Utilities Motion.** The Hotel relies upon myriad utility providers to ensure a safe, comfortable, and welcoming environment for its customers. If one or more of Debtor's utility providers ceases service—whether in violation of the Bankruptcy Code or otherwise—it would threaten the Hotels' reputation and Debtor's ability to operate the Hotel.

28. Specifically, Debtor relies upon at least the following utility services:

| Name of Utility | Nature of Services | Average Monthly Cost |
|---|---|---|
| Clallam County PUD | Electricity | $3,400 |
| Ferrell Gas | Propane | $1,900 |
| City of Sequim | Water/Sewer | $3,500 |
| DM Disposal | Trash | $900 |
| AT&T | Phone | $300 |
| **Total** | | $10,000 |

29. In my view, Debtor would suffer immediate and irreparable harm absent the relief requested in the Utilities Motion.

30. **Cash Management Motion.** Because Debtor manages a hotel, it has an intricate cash management system that has operated effectively and without interruption for years. Without the ability to immediately process transactions, including customer receipts, payment of suppliers and trade vendors, processing payroll, and other functions, the Hotel would cease to function. The bank accounts and the cash management system have served the Hotel well for

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 10

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

years, and there is no sense in fixing what is broken.

31.     Debtor has an operating account (#9922) (the "Main Operating Account") at United Business Bank ("UBB"). The Main Operating Account is critical to Debtor's operations. Among other things, Debtor uses the funds in the Main Operating Account to pay employees, trade vendors, utility providers, and service suppliers, and to cover substantially all operating expenses associated with the Hotel. Revenues associated with renting Hotel rooms and other revenue-generating functions at the Hotel are deposited into the Main Operating Account. As of the petition date, Debtor estimates that this UBB checking account has approximately $160,000. Debtor also has a checking account (#4013) at UBB which was historically maintained by Wirta 2-H, LLC, an entity which merged into Debtor on August 11, 2021. As of the petition date, Debtor estimates that this UBB checking account has approximately $40,000. Debtor also maintains a checking account (#9509) at First Federal Savings and Loan. As of the petition date, Debtor estimates that this First Federal Savings and Loan checking account has approximately $140,000. Debtor also maintains a checking account (#3231) at Peoples Bank (together with First Federal Savings and Loan and UBB, the "Banks"), which Debtor used to receive PPP funds and which now serves as an extra checking account. As of the petition date, Debtor believes there are no funds remaining in the Peoples Bank account. To the best of my understanding, the Banks are FDIC-insured.

32.     Debtor also uses Bank of America Merchant Services ("Fiserv") to process credit card payments from customers of the Hotel. When a customer swipes his or her credit card at the Hotel, such transactions are placed into batches which are periodically released to a processing company, which then routes batched information to the credit card network for settlement. Substantially all of Debtor's revenue therefore flows through a processing entity (in this case, Fiserv).

33.     In my view, Debtor would suffer immediate and irreparable harm absent the relief requested in the Cash Management Motion.

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 11

1  I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED

2 STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST

3 OF MY KNOWLEDGE.

4  DATED this 13th day of August, 2021.

5

6      Bret Wirta, Member of Wirta Hotels, LLC and
      Shareholder/President of Wirta 2-Hotels, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF BRET WIRTA IN SUPPORT
OF DEBTOR'S FIRST DAY MOTIONS - 12

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA Doc 7 Filed 08/13/21 Ent. 08/13/21 14:15:31 Pg. 12 of 33

1

## **EXHIBIT A**

2

## **PLATINUM AWARD ARTICLE**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT A TO WIRTA DECLARATION

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700



Staff with the Quality Inn & Suites at the Olympic National Park gather to commemorate receiving the Platinum Award for being among their franchise's top 3 percent in customer satisfaction. Submitted photo

# Quality Inn's fifth straight Platinum Award makes it one of franchise's best

By Matthew Nash
Wednesday, April 14, 2021 1:30am | BUSINESS

Sequim's Quality Inn & Suites at Olympic National Park, 134 River Road, remains one of the best hotels among fellow franchises.

Its staff recently received Choice Hotels International's Platinum Award for 2020 as one of the top 3 percent of hotels in its franchise based on guest satisfaction.

That ranks Quality Inn & Suites among the best of Choice's 7,000-plus hotels in more than 40 countries and territories.

**Quality local journalism is more important than ever.**
SUPPORT OUR WORK »

This is the fifth year in a row the Sequim hotel received the award, general manager Nancy Merrigan said.

"It feels very awesome," she said. "It was a very trying year for 2020, so it was a great thing to reward all of our staff with something positive."

Owner Bret Wirta said they "are extremely proud of (Merrigan) and her staff for providing our guests with an extremely clean, safe, and satisfying home away from home."

The hotel employs 25 full- and part-time employees, including six developmentally disable individuals through a partnership with Morningside.

"I'm very proud of my team," Merrigan said. "It's been a struggle with the amount of employees we have, and it's been difficult to find employees."

One of the additions Merrigan provided, Wirta said, included a convenient sundries store in the lobby with snacks, frozen meals, beer and wine.

"Now guests don't have to leave the hotel if they want something to eat or drink," he said.

"It's just another example of how Nancy goes out of her way to make her guest's experience more convenient and comfortable."

Some of the rewards for the Platinum honor include a plaque for the hotel's lobby, special branding on Choice Hotels' website and extra marketing resources.

For more information about Quality Inn & Suites, call 360-683-2800 or visit choicehotels.com.

## Recommended for You

Born Billionaires: The     Did you descend from     PayPal

Get Started

"It feels very awesome," she said. "It was a very trying year for 2020, so it was a great thing to reward all of our staff with something positive."

Owner Bret Wirta said they "are extremely proud of (Merrigan) and her staff for providing our guests with an extremely clean, safe, and satisfying home away from home."

The hotel employs 25 full- and part-time employees, including six developmentally disable individuals through a partnership with Morningside.

"I'm very proud of my team," Merrigan said. "It's been a struggle with the amount of employees we have, and it's been difficult to find employees."

One of the additions Merrigan provided, Wirta said, included a convenient sundries store in the lobby with snacks, frozen meals, beer and wine.

"Now guests don't have to leave the hotel if they want something to eat or drink," he said.

"It's just another example of how Nancy goes out of her way to make her guest's experience more convenient and comfortable."

Some of the rewards for the Platinum honor include a plaque for the hotel's lobby, special branding on Choice Hotels' website and extra marketing resources.

For more information about Quality Inn & Suites, call 360-683-2800 or visit choicehotels.com.

## Recommended for You

Born Billionaires: The     Did you descend from     PayPal

Get Started



© 2021, Sequim Gazette and Sound Publishing, Inc.

Subscribe   |   Newsletters   |   Print Editions   |   About Us   |   Terms of Use   |   Privacy Policy   |   Accessibility   |   Contact Us

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## EXHIBIT B

**PRESS RELEASE RE: AWARD FROM GOVERNOR INSLEE FOR EMPLOYING DEVELOPMENTALLY DISABLED INDIVIDUALS (FEB. 2020)**

EXHIBIT B TO WIRTA DECLARATION

FOSTER GARVEY PC
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 17 of 33



FOR IMMEDIATE RELEASE:
Bret Wirta, Wirta Hospitality Worldwide
206-295-0247
bretw@wirtahospitalityworldwide.com

Date: March 6, 2020

Title: QUALITY INN & SUITES AT OLYMPIC NATIONAL PARK MANAGER ACCEPTS GOVERNOR'S EMPLOYER OF THE YEAR AWARD.

(Sequim, WA)

Nancy Merrigan, General Manager of the Quality Inn, Sequim, was honored by the Washington's Governor's Committee on Disability Issues & Employment (GCDE) on February 19th, 2020. Ms. Merrigan received the Employer of the Year award for her hotel's diversity and exceptional work environment. Ms. Merrigan was congratulated personally by Govenor Jay Inslee at a special ceremony in the Governor's office in Olympia. Ms. Merrigan has developed a long-term partnership with Morningside, a Port Angeles agency that assists adults with disabilities to succeed at their job in the community. One third of the Quality Inn, Sequim's staff are workers with disabilities.

Quality Inn, Sequim Owner, Bret Wirta, said, "Nancy is committed to recruiting, hiring, and retaining workers with disabilities. Nancy has created an inclusive work environment which her employees say feels like a family."

Govenor Inslee thanked Ms. Merrigan for her commitment to workers with disabilities and said her recognition was well-deserved.

When asked about the meeting, "Ms. Merrigan said, "It was an honor receiving this award from Gov. Inslee. I feel so grateful that he recognized our hardworking staff. I enjoyed his story he shared about staying at our hotel a few years ago for his wedding anniversary. I told him he needs to come back and visit us again!"

-END-

Bret Wirta Owner
T 206 295 0247  E b.wirta@comcast.net          7303 21st Avenue NW, Seattle, WA 98117          Patricia Wirta  Owner
T 206 972 0409  E trishaw@comcast.net

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## <u>**EXHIBIT C**</u>

**PICTURE WITH GOVERNOR INSLEE AT CEREMONY FOR AWARD (FEB. 2020)**

EXHIBIT C TO WIRTA DECLARATION

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700



## **EXHIBIT D**

## **NOTICE OF DEFAULT**

EXHIBIT D TO WIRTA DECLARATION

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400 FAX (206) 447-9700

# NOTICE OF DEFAULT

# PURSUANT TO THE REVISED CODE OF WASHINGTON CHAPTER 61.24, ET. SEQ.

To: Wirta 2 - H, LLC  and Wirta Hotels, LLC

Re: TS #: WA21-00130                               Loan #: Wirta 2

## 1. **DEFAULT:**

You are hereby notified that Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of Wells Fargo Commercial Mortgage Trust 2016-C35, Commercial Mortgage Pass-Through Certificates, Series 2016-C35 (the "Beneficiary"), the current beneficiary of the Deed of Trust (as hereinafter defined) has declared you in default on the obligation secured by a Fee and Leasehold Deed of Trust recorded on 6/20/2016 under Auditor's/Recorder's No. 2016-1335913, Records of Clallam County, Washington (the "Deed of Trust"), which Deed of Trust encumbers the following described real property: APN:

Leasehold Land Legal Description:

Leasehold Estate as created by that Hotel Lease dated May 1, 2004 between Wirta 2, LLC, a Washington limited liability company, as landlord and Wirta Hotels, LLC, a Washington limited liability company, as tenant, as assigned and assumed by that Lease Assignment and Assumption Agreement dated June 17, 2016 by Wirta 2, LLC, a Washington limited liability company, as assignor to Wirta 2-H, LLC, a Washington limited liability company, as assignee, pursuant to a Memorandum of Lease dated June 17, 2016 between Wirta 2-H, LLC, a Washington limited liability company, as landlord and Wirta Hotels, LLC, a Washington limited liability company, as tenant and intended to be recorded in the Records of Clallam County Washington

and

Fee Land Legal Description

Lot 3 of the City of Sequim Final Major Binding Site Plan BSP 04/001, as Recorded in Volume 1 of Binding Site Plans, Page 12, Records of Callam County, Washington.

Situate in the County of Clallam, State of Washington

The postal address of which is more commonly known   134 River Road
as:                                                    Sequim, WA 98382

## 2. **STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNT IN ARREARS:**

The Beneficiary alleges that you are in default for the following reasons:

a.   FAILURE TO PAY (I) THE INSTALLMENT PAYMENT THAT WAS DUE ON 08/6/2020 OF PRINCIPAL, INTEREST, INSURANCE IMPOUNDS AND RESERVES AND ALL SUBSEQUENT INSTALLMENT PAYMENTS, (II) LATE CHARGES, (III) DEFAULT INTEREST, (IV) ADVANCES MADE BY THE BENEFICIARY, PLUS INTEREST THEREON FROM THE DATES PAID, (V) ATTORNEY'S FEES, SPECIAL FEES AND COSTS AND EXPENSES OF COLLECTION, AND (VI) TRUSTEE'S AND FORECLOSURE FEES AND EXPENSES.

152503899.1
152544320.1

b.   Failure to pay the following past due amounts, which are in arrears:

| PAYMENT INFORMATION | | | | |
|---|---|---|---|---|
| From | Through | Number of Payments | Monthly Payment | Total Payments |
| 08/6/2020 | | 10 | $37,255.86 (principal, interest, insurance impounds and reserves) | $372,558.60 |

| PROMISSORY NOTE INFORMATION |
|---|

Note Dated:                                                        06/17/2016

Note Amount:                                              $4,600,000.00

Interest Paid To:                                                 03/6/2020

## 3. OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you are or may be obligated to pay the following charges, costs and fees to cure the default under the Deed of Trust if cure is made before recording the Notice of Trustee's Sale:

Beneficiary's Advances, Costs, and Expenses (as of May 5, 2021)

| DESCRIPTION | | ADVANCE AMOUNT |
|---|---|---|
| 5/5/2021 | Late Charges | $28,412.48 |
| 5/5/2021 | Suspense | ($2,213.60) |
| 5/5/2021 | Default Interest | $232,432.17 |
| 5/5/2021 | Legal Fees | $5,000.00 |

Total Advances, Costs and Expenses:                    $263,631.05

Foreclosure Fees and costs

$15,753.72

## 4. REINSTATEMENT: IMPORTANT! PLEASE READ!

2

152503899.1
152544320.1

THE ESTIMATED TOTAL AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS $651,943.37, BEING THE TOTAL OF PARAGRAPHS 2 AND 3 ABOVE, PLUS THE AMOUNT OF ANY MONTHLY PAYMENTS AND LATE CHARGES WHICH MAY FALL AFTER THE DATE OF THIS NOTICE OF DEFAULT. However, because interest continues to accrue and some of the items can only be estimated at this time, and because the amount needed to reinstate and/or payoff may include presently unknown expenditures required to preserve the property or to comply with State or local laws, it may be necessary for you to contact the Beneficiary prior to the time you tender the reinstatement and/or payoff amount so that you may be advised of the exact amount you would be required to pay.

Payment must be made in the full amount by cash or cashier's check or certified checks from federally or state chartered banks, and delivered or mailed as specified by the Beneficiary. Personal checks will not be accepted.

The Notice of Trustee's Sale may be recorded after thirty (30) days from the date this notice is mailed and served upon you or posted upon the premises, whichever occurs latest.

Reinstatement monies may be tendered to:  Address for Service of Process upon Trustee:

| | |
|---|---|
| Scott D. Crawford, Esq. | Scott D. Crawford, Esq. |
| ZBS Law, LLP | ZBS Law, LLP |
| 11335 NE 122nd, Suite 105 | 11335 NE 122nd, Suite 105 |
| Kirkland, WA 98034 | Kirkland, WA 98034 |
| 206-209-0375 | 206-209-0375 |

### 5.  CONSEQUENCES OF DEFAULT:

a.  IF YOU FAIL TO CURE THE DEFAULT(S) AS SET FORTH IN PARAGRAPHS 2 AND 3 BY PAYMENT TO THE BENEFICIARY OF THE AMOUNT SET FORTH IN PARAGRAPH 4, WITHIN THIRTY (30) DAYS OF THE MAILING OF THIS NOTICE, OR WITHIN THIRTY (30) DAYS OF THE DATE THIS NOTICE IS POSTED, WHICHEVER IS LATER, MAY LEAD TO RECORDATION, TRANSMITTAL AND PUBLICATION OF A NOTICE OF TRUSTEE'S SALE, AND THE PROPERTY DESCRIBED IN PARAGRAPH 1 ABOVE MAY BE SOLD AT PUBLIC AUCTION AT THE DATE NO LESS THAN ONE-HUNDRED TWENTY (120) DAYS IN THE FUTURE.

b.  The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be (i) increase the costs and fees, and (ii) publicize the default and advertise the property described herein for sale.

c.  The effect of a trustee's sale of the above-described property by the trustee will be to deprive you, or your successors-in-interest, and all of those who hold by, through or under you, of all of your or their interest in the property described in Paragraph 1 above.

### 6.  RECOURSE TO COURTS:

You or your successor(s)-in-interest have recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on your part on any proper ground.

### 7.  NOTICE TO GUARANTOR(S):

GUARANTOR(s): Please take notice that: (1) the guarantor(s) may be liable for a deficiency judgment to the extent the sale price obtained at the trustee's sale is less than the debt secured by the deed of trust, (2) the guarantor(s) has the same rights to reinstate the debt, cure the default, or repay the debt as is given to the granter in order to avoid the trustee's sale; (3) the guarantor(s) will have no right to redeem the property after the trustee's sale; (4) subject ot such longer periods as are provided in the Washington deed of trust

3

152503899.1
152544320.1

act, chapter 61.24 RCW, any action brought to enforce a guaranty must be commenced within one year after the trustee's sale, or the last trustee's sale under any deed of trust granted to secure the same debt; and (5) in any action for a deficiency the guarantor(s) will have the right to establish the fair value of the property as of the date of the trustee's sale, less prior liens and encumbrances, and to limit its liability for a deficiency to the difference between the debt and the greater of such fair value or the sale price paid at the trustee's sale, plus interest and costs.

DATED: 5/25/2021

**Scott D. Crawford, Esq. c/o ZBS Law, LLP**

BY: Scott D. Crawford

152503899.1
152544320.1

## VALIDATION OF DEBT

Scott D. Crawford, Esq.
ZBS Law, LLP
11335 NE 122nd, Suite 105
Kirkland, WA 98034
206-209-0375

RE: T.S. #  WA21-00130     Loan #  Wirta 2

(1) Unpaid Principal Balance: $4,247,491.45:
    Reinstate amount as of 5/05/2021:  $651,943.37

(2)   Name of Creditor to whom debt is owed:    Wilmington Trust, National Association,
      as Trustee for the benefit of the registered holders of Wells Fargo Commercial
      Mortgage Trust 2016-C35, Commercial Mortgage Pass-Through Certificates,
      Series 2016-C35

(3) Unless you, within thirty (30) days after the receipt of this notice, dispute the validity of
    the debt, or any portion thereof, the debt will be assumed to be valid by the debt
    collector.

(4) If you notify the debt collector in writing within the thirty (30) day period that the debt,
    or any portion thereof is disputed, the debt collector will obtain verification of the debt
    or a copy of a judgment against the consumer and a copy of such verification or
    judgment will be mailed to the consumer by the debt collector; (Verification or
    judgment attached)

(5) Upon your written request within the thirty (30) day period, the debt collector will
    provide the consumer with the name and address of the original creditor, if different
    from the current creditor.

The communication to which this Validation is attached is an attempt to collect a debt and
any information obtained will be used for that purpose.

5

152503899.1
152544320.1

**EXHIBIT E**

**CASH COLLATERAL BUDGET**

EXHIBIT E TO WIRTA DECLARATION

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 27 of 33

## Quality Inn Sequim WA
### Weekly Expense Estimates

| | 8/13 | 8/22 | 9/1 | 9/8 | 9/15 | 9/22 | 10/1 | 10/8 | 10/15 | 10/22 | 11/1 | 11/8 | 11/15 | 11/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 340,000 | $ 360,730 | $ 376,430 | $ 344,230 | $ 380,630 | $ 336,310 | $ 364,610 | $ 312,650 | $ 332,390 | $ 271,010 | $ 282,650 | $ 236,760 | $ 253,970 | $ 225,260 |
| | | | | | | | | | | | | | | |
| **Revenues** | $ 65,000 | $ 65,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 27,000 | $ 23,000 | $ 23,000 | $ 23,000 | 23,000 |
| | | | | | | | | | | | | | | |
| **State Sales Tax Collected** | $ 9,750 | $ 9,750 | $ 6,750 | $ 6,750 | $ 6,750 | $ 6,750 | $ 4,050 | $ 4,050 | $ 4,050 | $ 4,050 | $ 3,450 | $ 3,450 | $ 3,450 | 3,450 |
| **Departmental Expenses** | | | | | | | | | | | | | | |
| **Rooms Expense** | | | | | | | | | | | | | | |
| Employee Taxes (FICA, SUI) | $0 | $0 | $2,700 | $0 | $2,700 | $0 | $2,500 | $0 | $2,500 | $0 | $2,200 | $0 | $2,200 | $0 |
| Supplemental Pay (Holiday, Vacation, Sick) | $0 | $0 | $2,000 | $0 | $2,000 | $0 | $1,500 | $0 | $1,500 | $0 | $1,000 | $0 | $1,000 | $0 |
| Employee Medical Benefits | $0 | $0 | $300 | $0 | $300 | $0 | $300 | $0 | $300 | $0 | $300 | $0 | $300 | $0 |
| Housekeeping Supplies | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Guest Supplies | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Marketplace Expense | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 |
| Breakfast Food & Beverage | $3,200 | $3,200 | $2,800 | $2,800 | $2,800 | $2,800 | $2,300 | $2,300 | $2,300 | $2,300 | $1,500 | $1,500 | $1,500 | $1,500 |
| Reimbursed Hospitality | $1,900 | $1,900 | $1,700 | $1,700 | $1,700 | $1,700 | $1,200 | $1,200 | $1,200 | $1,200 | $1,300 | $1,300 | $1,300 | $1,300 |
| Reservation System Fees | $650 | $650 | $450 | $450 | $450 | $450 | $270 | $270 | $270 | $270 | $230 | $230 | $230 | $230 |
| Training | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 |
| Television & Internet | $0 | $1,900 | $0 | $0 | $0 | $1,900 | $0 | $0 | $0 | $1,900 | $0 | $0 | $0 | $1,900 |
| Travel Agent Fees | $1,300 | $1,300 | $900 | $900 | $900 | $900 | $540 | $540 | $540 | $540 | $460 | $460 | $460 | $460 |
| Front Desk Wages | $0 | $0 | $6,000 | $0 | $6,000 | $0 | $6,000 | $0 | $6,000 | $0 | $6,000 | $0 | $6,000 | $0 |
| Housekeeping/Laundry Wages | $0 | $0 | $9,000 | $0 | $9,000 | $0 | $7,500 | $0 | $7,500 | $0 | $5,000 | $0 | $5,000 | $0 |
| Breakfast Bar Wages | $0 | $0 | $1,400 | $0 | $1,400 | $0 | $1,400 | $0 | $1,400 | $0 | $1,400 | $0 | $1,400 | $0 |
| **Total Rooms Expense** | **$7,850** | **$9,750** | **$28,050** | **$6,650** | **$28,050** | **$8,550** | **$24,310** | **$5,110** | **$24,310** | **$7,010** | **$20,190** | **$4,290** | **$20,190** | **$6,190** |
| **Overhead Expenses** | | | | | | | | | | | | | | |
| **Admin and General** | | | | | | | | | | | | | | |
| Manager Salaries | $0 | $0 | $2,700 | $0 | $2,700 | $0 | $2,700 | $0 | $2,700 | $0 | $2,700 | $0 | $2,700 | $0 |
| Credit Card & Merchant Fees | $17,750 | $0 | $0 | $0 | $11,800 | $0 | $9,300 | $0 | $0 | $0 | $5,000 | $0 | $0 | $0 |
| Professional Services | $0 | $2,800 | $0 | $0 | $0 | $2,800 | $0 | $0 | $0 | $2,800 | $0 | $0 | $0 | $2,800 |
| Professional Fund | $0 | $30,000 | $30,000 | $0 | $0 | $0 | $30,000 | $0 | $0 | $0 | $0 | $30,000 | $0 | $0 |
| Front Office Expenses | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| State Taxes & Fees | $11,700 | $11,700 | $7,300 | $7,300 | $7,300 | $7,300 | $4,700 | $4,700 | $4,700 | $4,700 | $3,450 | $3,450 | $3,450 | $3,450 |
| B&O Tax | $0 | $1,200 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 | $1,200 | $0 | $0 | $0 | $1,200 |
| **Total Admin & General** | **$29,950** | **$46,200** | **$40,500** | **$7,800** | **$22,300** | **$11,800** | **$47,200** | **$5,200** | **$7,900** | **$9,200** | **$41,650** | **$3,950** | **$6,650** | **$7,950** |
| **Sales and Marketing** | | | | | | | | | | | | | | |
| Local Marketing | $120 | $0 | $0 | $0 | $120 | $0 | $0 | $0 | $120 | $0 | $0 | $0 | $120 | $0 |
| Rewards Program | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Marketing Fee Corporate | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Sales & Marketing** | **$120** | **$0** | **$0** | **$0** | **$120** | **$0** | **$0** | **$0** | **$120** | **$0** | **$0** | **$0** | **$120** | **$0** |
| **Utilities** | | | | | | | | | | | | | | |
| Electricity | $3,400 | $0 | $0 | $0 | $2,900 | $0 | $0 | $0 | $3,000 | $0 | $0 | $0 | $2,800 | $0 |
| Propane | $3,400 | $0 | $0 | $0 | $2,900 | $0 | $0 | $0 | $3,000 | $0 | $0 | $0 | $2,800 | $0 |
| Telephone | $600 | $0 | $0 | $0 | $600 | $0 | $0 | $0 | $600 | $0 | $0 | $0 | $600 | $0 |
| Trash | $1,300 | $0 | $0 | $0 | $1,300 | $0 | $0 | $0 | $1,300 | $0 | $0 | $0 | $1,300 | $0 |
| Water | $6,500 | $0 | $0 | $0 | $5,500 | $0 | $0 | $0 | $5,700 | $0 | $0 | $0 | $5,200 | $0 |
| **Total Utilities** | **$15,200** | **$0** | **$0** | **$0** | **$13,200** | **$0** | **$0** | **$0** | **$13,600** | **$0** | **$0** | **$0** | **$12,700** | **$0** |
| **Property Maintenance** | | | | | | | | | | | | | | |
| Repair & Maintenance | $900 | $900 | $900 | $900 | $900 | $900 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Repair & Maintenance Wages | $0 | $0 | $1,500 | $0 | $1,500 | $0 | $1,500 | $0 | $1,500 | $0 | $1,500 | $0 | $1,500 | $0 |
| **Total Property & Maintenance** | **$900** | **$900** | **$2,400** | **$900** | **$2,400** | **$900** | **$2,500** | **$1,000** | **$2,500** | **$1,000** | **$2,500** | **$1,000** | **$2,500** | **$1,000** |
| **Franchise / Royalty Fees** | **$0** | **$0** | **$0** | **$0** | **$30,000** | **$0** | **$0** | **$0** | **$22,000** | **$0** | **$0** | **$0** | **$13,000** | **$0** |
| **Mgmt Fee** | **$0** | **$0** | **$13,000** | **$0** | **$0** | **$0** | **$9,000** | **$0** | **$0** | **$0** | **$8,000** | **$0** | **$0** | **$0** |
| **Total Undistributed Expenses** | **$46,170** | **$47,100** | **$55,900** | **$8,700** | **$68,020** | **$12,700** | **$58,700** | **$6,200** | **$46,120** | **$10,200** | **$52,150** | **$4,950** | **$34,970** | **$8,950** |
| **Fixed Expenses** | | | | | | | | | | | | | | |
| **Property and Other Taxes** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **22,000** | **0** | **0** | **0** | **0** | **0** |
| **Insurance** | | | | | | | | | | | | | | |
| Property Insurance | 0 | 2,200 | 0 | 0 | 0 | 2,200 | 0 | 0 | 0 | 2,200 | 0 | 0 | 0 | 2,200 |
| **Total Insurance** | **0** | **2,200** | **0** | **0** | **0** | **2,200** | **0** | **0** | **0** | **2,200** | **0** | **0** | **0** | **2,200** |
| **Total Fixed Expenses** | **$0** | **$2,200** | **$0** | **$0** | **$0** | **$2,200** | **$0** | **$0** | **$22,000** | **$2,200** | **$0** | **$0** | **$0** | **$2,200** |
| **Total Expenses** | **$54,020** | **$59,050** | **$83,950** | **$15,350** | **$96,070** | **$23,450** | **$83,010** | **$11,310** | **$92,430** | **$19,410** | **$72,340** | **$9,240** | **$55,160** | **$17,340** |
| **Net Income** | **$20,730** | **$15,700** | **-$32,200** | **$36,400** | **-$44,320** | **$28,300** | **-$51,960** | **$19,740** | **-$61,380** | **$11,640** | **-$45,890** | **$17,210** | **-$28,710** | **$9,110** |
| | | | | | | | | | | | | | | |
| **Ending Cash** | $ 360,730 | $ 376,430 | $ 344,230 | $ 380,630 | $ 336,310 | $ 364,610 | $ 312,650 | $ 332,390 | $ 271,010 | $ 282,650 | $ 236,760 | $ 253,970 | $ 225,260 | $ 234,370 |

Slotting of the expense in a particular week is an estimate on timing only.
Payment timing may vary from estimate by up to 30 days.
Sales/lodging tax is collected with room charges.
Franchise Fees include marketing and other franchise related costs
Payroll for 8/13 week has already been processed and are reflected in beginning cash balances
Management fee is 5% of prior month revenues or $8,000, whichever is greater.

# **EXHIBIT F**

## **2016 APPRAISAL (EXCERPT)**

EXHIBIT F TO WIRTA DECLARATION

**FOSTER GARVEY PC**
1111 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-3292
PHONE (206) 447-4400  FAX (206) 447-9700

Case 21-11556-CMA    Doc 7    Filed 08/13/21    Ent. 08/13/21 14:15:31    Pg. 29 of 33



# QUALITY INN & SUITES SEQUIM

134 River Road
Sequim, Clallam County, Washington 98382

**APPRAISAL REPORT**

Date of Report: June 10, 2016
Colliers File #: ORD160353
Client ID: WIRTA 2 LLC



PREPARED FOR
Mr. James Palmisano, Executive Director, CRE Credit Officer
UBS Real Estate Securities, Inc.
1285 Avenue of the Americas
New York, New York 10019

PREPARED BY
COLLIERS INTERNATIONAL
VALUATION & ADVISORY SERVICES
HOSPITALITY & LEISURE GROUP

# LETTER OF TRANSMITTAL

**COLLIERS INTERNATIONAL**
**VALUATION & ADVISORY SERVICES**
**HOSPITALITY & LEISURE GROUP**

227 West Monroe Street, Suite 1000
Chicago, Illinois 60606
MAIN +1 312 602 6160
FAX +1 312 651 0309
WEB www.colliers.com/valuationadvisory

**Colliers**
INTERNATIONAL

June 10, 2016

Mr. James Palmisano
Executive Director, CRE Credit Officer
**UBS Real Estate Securities, Inc.**
1285 Avenue of the Americas
New York, New York, 10019

**RE: Quality Inn & Suites Sequim**
  134 River Road
  Sequim, Washington 98382

Colliers File No.: ORD160353

Client File ID: WIRTA 2 LLC

Dear Mr. Palmisano:

Pursuant with our engagement, the above captioned property was appraised utilizing best practice appraisal principles for this property type. This appraisal report satisfies the scope of work and requirements agreed upon by UBS Real Estate Securities, Inc. and Colliers International Valuation & Advisory Services.

At the request of the client, this appraisal is presented in an Appraisal Report format as defined by *USPAP* Standards Rule 2-2(a). Our appraisal format provides a detailed description of the appraisal process, subject and market data and valuation analyses.

The subject property, commonly known as Quality Inn & Suites Sequim, is a 3-story, 60-room, limited-service lodging facility built in 2006. The property was in good condition at the time of inspection. The subject property features all basic services for a property of this type, and offers amenities including a breakfast room, fitness room, indoor swimming pool, business center, meeting space, vending and ice machines. The rooms are loaded off of interior corridors. The property is located in the northwest quadrant formed by the intersection of US Highway 101 and River Road. The neighborhood is located in the western section of the City of Sequim, which is in the northwestern portion of the Port Angeles metropolitan statistical area.

The purpose of this appraisal is to develop certain opinions of value for the subject property in its Fee Simple interest. The following table conveys the final opinions of market value of the subject property that are developed within this appraisal report:

Colliers International Valuation & Advisory Services, and certain of its subsidiaries, is an independently owned and operated business and a member firm of Colliers International Property Consultants, an affiliation of independent companies with over 500+ offices throughout more than 63 countries worldwide.

| FINAL RECONCILED VALUES | | |
|---|---|---|
| **Conclusions** | **As Is**<br>**May 4, 2016** | **Upon Stabilization**<br>**May 4, 2018** |
| **Market Value** | **$7,400,000** | **$8,100,000** |
| Per Room | $123,333 | $135,000 |
| ALLOCATION OF PROPERTY COMPONENTS | | |
| **Component** | **As Is** | **Upon Stabilization** |
| Real Property | $7,023,000 | $7,700,000 |
| Furniture, Fixtures and Equipment | $377,000 | $400,000 |
| Business | $0 | $0 |
| **Total** | **$7,400,000** | **$8,100,000** |

The analyses, opinions and conclusions communicated within this appraisal report were developed based upon the requirements and guidelines of the current Uniform Standards of Professional Appraisal Practice (USPAP), the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute. The report is intended to conform to the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) standards and the appraisal guidelines of UBS Real Estate Securities, Inc..

The report, in its entirety, including all assumptions and limiting conditions, is an integral part of, and inseparable from, this letter. *USPAP* defines an Extraordinary Assumption as, "an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions". *USPAP* defines a Hypothetical Condition as, "that which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis".

The Extraordinary Assumptions and/or Hypothetical Conditions that were made during the appraisal process to arrive our opinions of value are fully discussed below. We the client to consider these issues carefully given the intended use of this appraisal, as their use might have affected the assignment results.

## EXTRAORDINARY ASSUMPTIONS

The subject property is near completion of a property improvement plan that is reported to cost ±$300,000. The upgrades are to be completed on or before June 1st. We assume that these upgrades have already been funded, that they are completed in a very good workmanlike manner, within the time and cost budgets stipulated herein, and sufficient enough in scope for the property to retain its brand affiliation throughout the holding period. Furthermore, the prospective market value estimates are based upon market participant attitudes and perceptions existing as of the effective date of our appraisal, and assumes the subject property achieves stabilization as of our prospective date. We assume no material change in the physical characteristics and condition of the subject property or in overall market conditions between the date of inspection and effective dates of value, except for those identified within the report.

## HYPOTHETICAL CONDITIONS

This appraisal does not employ any hypothetical conditions.

## RELIANCE LANGUAGE

This report and the information contained herein (i) may be relied upon by UBS Real Estate Securities Inc. in determining whether to make a loan secured by the Property and/or one or more loans secured by interests therein (each individually, a "Loan"), (ii) may be relied upon by any potential purchaser in determining whether to purchase any Loan, an interest in any Loan, or any securities backed or secured, in whole or in part, by any Loan or an interest in any Loan, (iii) may be relied upon by any rating agency rating securities representing an interest in any Loan or backed or secured, in whole or in part, by any Loan or an interest in any Loan, (iv) may be referred to in and included, in whole or in part, with materials offering for sale any Loan, an interest in any

Loan or any securities backed or secured, in whole or in part, by any Loan or an interest in any Loan and (v) speak only as of the date of this report in the absence of a specific written update of this report signed and delivered by Colliers International.

Our opinion of value reflects current conditions and the likely actions of market participants as of the date of value. It is based on the available information gathered and provided to us, as presented in this report, and does not predict future performance. Changing market or property conditions can and likely will have an effect on the subject's value.

The below-undersigned indicate our assurance to the client that the development process and extent of analysis for this assignment adhere to the scope requirements and intended use of the appraisal. If you have any specific questions or concerns regarding the attached appraisal report, or if Colliers International Valuation & Advisory Services can be of additional assistance, please contact the individuals listed below.

Sincerely,

**COLLIERS INTERNATIONAL, VALUATION & ADVISORY SERVICES**
**HOSPITALITY & LEISURE GROUP**

Bryan Younge, MAI, ASA
Managing Director, National Practice Leader
Certified General Real Estate Appraiser
State of Washington  License #1102204, expires 1/26/2017
+1 773 263 4544 Direct
bryan.younge@colliers.com